# Blackburn *v*. The State.

*Iudictment for Manslaughter.*

| 86 | 595 |
| 97 | 26 |
| 86 | 595 |
| 106 | 57 |
| 86 | 595 |
| 111 | 15 |
| 115 | 40 |

1. *Misleading charge.*—A charge given, which asserts a correct legal proposition, though it may tend to mislead the jury, is not a reversible error, since its misleading tendencies might be corrected by a request for an explanatory charge; and more particularly where, on the evidence set out in the bill of exceptions, this court can not see how the charge could have misled the jury.

2. *Self-defense; charge as to imminent danger, and duty to retreat.*—To make out the plea of self-defense in a case of homicide, it must not only appear that the defendant was, or appeared to be, in imminent peril to life or limb; but that he had avoided the combat by retreating, if or so long as he could do so without increasing his peril; and where the evidence shows that, after walking away from the deceased for about thirty yards, the deceased having a stick in one hand and a pair of metal knuckles in the other, and saying "Let's settle this matter now," the defendant turned suddenly and shot him, a charge assuming that he

[Blackburn v. The State.]

retreated in good faith, or that he had retreated as far as he could without increasing his danger, is properly refused.

3. *Charge as to sufficiency of evidence.*—A charge asked in a criminal case, instructing the jury that they should not find the defendant guilty, "unless the evidence against him is sufficiently strong to remove every supposition or hypothesis but that of his guilt," is properly refused.

FROM the Circuit Court of Blount.

Tried before the Hon. JOHN B. TALLY.

The indictment in this case charged, in a single count, that the defendant, Jere. Blackburn, "unlawfully and intentionally, but without malice, killed Mat. Gray by ·shooting him with a pistol." The homicide was committed at Blount Springs in said county, early in March, 1888, at about 9 o'clock in the morning of the day; and the evidence in relation to it, as adduced on the trial, is thus stated in the bill of exceptions: "The State introduced evidence tending to show that the defendant and the deceased were walking together, from the corner of Randolph's store, in the direction of Jackson's livery-stable, where the defendant was employed; that the defendant was walking five or six feet in front, and the deceased following him, with a green sycamore stick in his hand; that they had passed about thirty yards in this manner, and reached a small drain, or ditch, when the deceased said, 'Let's settle this matter, you know they wont let me go to the stable,' leaning back on his stick, and holding it in his hand by the small end; whereupon the defendant sprang across the ditch, and suddenly wheeled and shot him. The defendant introduced evidence tending to show that, on the morning of the killing, the deceased came into the town of Blount Springs about nine o'clock, and went at· once to the livery-stable where the defendant was employed, and inquired where one King was; that, being told King was in town, he asked who was with him, and was told that the defendant was; and that he then ·cursed defendant, and at once went in the direction of King's room or office. The evidence for the defense tended to show, also, that the defendant had gone to King's room, and left, going down the steps to the street, two or three minutes before the killing; that he came around the corner of the store, from the direction of said room, walking rapidly in the direction of the stable, and looking back over his shoulder at the deceased, who was following five or six steps behind, with a stick in his hand; that they proceeded in this manner until they reached a small ditch, when the deceased said, 'Let's settle this matter, you know I am not allowed to

go to the stable;' that the defendant then jumped across the ditch sidewise, and wheeled and shot him; that the defendant walked on towards the stable, while the deceased stopped, looked at him, and gradually sank down and died; that the deceased, at the time he was shot, had a drawn stick in one hand, and a pair of metal knuckles in the other; that he took the knuckles from his hand after he was shot, and they were found in his pocket a few minutes after his death, and produced in evidence on the trial.   The evidence tended to show, also, that on several occasions, within a short time before the killing, the deceased had said he intended to whip the defendant, and also that he intended to kill him, which threats had been communicated to the defendant; that the deceased was about 28 years of age, and an unusually fine specimen of physical manhood; that his character for peace was bad, and he first came to Blount Springs as a convict under sentence for murder, but had been pardoned at the time of the killing.   The evidence tended to show, also, that as the defendant and the deceased came around the corner of the store, the deceased was saying something to the defendant, and the defendant was begging him to go away and let him alone."

"This being substantially all the evidence," the court charged the jury as follows:   "There must exist, at the time of the killing, a pressing necessity, either real or apparent, to protect the life of the slayer, or to save himself from great bodily harm; *it must not appear from the evidence that the slayer was at fault, in bringing about that necessity —in provoking the difficulty;* and there must be no other reasonable mode of escape from such danger."   The bill of exceptions adds:   "The court further charged the jury, in this connection, that if, from the evidence, they found that defendant and the deceased came around the corner of the store, going in the direction of the stable; that the deceased was following the defendant, and saying something to him; and that the defendant was begging him to go away and let him alone,—then the defendant was not at fault in bringing on the difficulty."

The defendant excepted to that part of the above charge which is italicized, and he also excepted to the refusal of the following charges, which were asked by him in writing: (1.) "If the jury believe, from all the evidence in this case, that the defendant, at the time of the killing, was in such imminent danger, or if it appeared so to him; then he was

not required to retreat further, and the killing would not be wrongful, and it will be the duty of the jury to acquit him." (2.) "The law of self-defense authorized the defendant to stop retreating, whenever his safety required it; and if the circumstances surrounding him were such as would impress a reasonable man of imminent danger to his life or limb, then he would be justified in acting on the apparent danger confronting him, and firing on his assailant." (3.) "The jury should not find the defendant guilty, unless the evidence against him is sufficiently strong to remove every supposition or hypothesis but that of his guilt."

Jno. W. Inzer, and W. F. Dickinson, for appellant, cited *Oliver v. State*, 17 Ala. 587; *Holmes v. State*, 23 Ala. 17.

Wm. L. Martin, Attorney-General, *contra*, cited 3 Brick. Dig. 219, § 567; 221, § 600; 113, § 107.

SOMERVILLE, J.—The defendant was indicted and tried for killing one Mat. Gray, by shooting him with a pistol, and was convicted of manslaughter in the first degree. The contention on the trial in the court below was, that the killing was done in self-defense, which the evidence tended to prove. The court charged the jury, among other things, that it must not appear from the evidence that the slayer was at fault in bringing about the alleged necessity for the killing, or in provoking the difficulty. The exception taken to this part of the charge was, that it was abstract, and tended to mislead the jury. It was unquestionably a correct proposition of law, and its alleged misleading tendencies could have been corrected by an explanatory charge. We have often held such charges not to be erroneous, in the sense of constituting a reversible error. We can not see, moreover, how this charge could have misled the jury, under the circumstances of the case, as it was for the jury to say whether the defendant was not in fault in having declined to retreat further. This fact may have brought on the difficulty, and thus produced the necessity of taking life.—*Fallin v. State*, 83 Ala. 5.

To invoke the doctrine of self-defense in cases of homicide, it must not only appear that the defendant, at the time of the killing, entertained reasonable apprehension of great personal violence, involving imminent peril to life or limb, but that he had availed himself of all proper means in his

power to decline combat by retreat, provided he could do so in safety, or without putting himself at a disadvantage. The first charge requested by defendant was erroneous, in two particulars: (1) It assumed by strong implication, as matter of fact, that the defendant was in good faith retreating, whereas there was room for a contrary inference by the jury, based upon the sudden manner in which he turned upon and shot the deceased, by anticipating any overt act on the part of the latter. (2) It asserts the right to kill when one is in "imminent danger," ignoring that this danger must involve peril to life or limb. The second charge was also erroneous in being obnoxious to the first objection above suggested, to which the first charge was liable.

The third charge asserts, in effect, that every hypothesis of the defendant's innocence, however unreasonable, or speculative, would authorize his acquittal, which is obviously erroneous.

These charges were all properly refused, and the judgment of conviction must be affirmed.

