# Brantley *v.* The State.

### *Indictment for Selling Liquor without License.*

1. *Proof of intoxicating properties of bitters, or tonic.*—In a prosecution for the violation of a local prohibitory liquor law, the article sold being called a *tonic,* or *bitters,* its intoxicating properties may be proved by the testimony of witnesses as to its effects on themselves; and they may state, though in the form of an opinion, the quantity necessary to produce intoxication as compared with whiskey.

2. *Retailing spirituous liquors, or intoxicating bitters, without license; sufficiency of indictment.*—Under an indictment which charges that the defendant "sold spirituous, vinous, or malt liquors, without a license, and contrary to law" (Code §§ 629, 4037), a conviction can not be had on proof of a sale of intoxicating bitters, unless the evidence also shows that the bitters contained, in appreciable quantity, one or more liquors of the specified kind; but, when the prosecution is founded on a local prohibitory law, which includes "intoxicating bitters, or any other intoxicating drink," and the indictment charges the sale of "spirituous, vinous, or malt liquors, or intoxicating bitters," proof of the ingredients of the intoxicating bitters sold is not necessary to a conviction. (Overruling *Allred v. State,* 89 Ala. 112.)

3. *Argumentative charges* are properly refused, without regard to the correctness of the legal propositions asserted by them.

FROM the Circuit Court of Covington.

Tried before the Hon. JOHN P. HUBBARD.

The indictment in this case charged, that the defendant, Edward Brantley, "sold spirituous, vinous, or malt liquors, without a license, and contrary to law;" and the bill of exceptions states, that the prosecution was founded on a "local law in Covington county relating to the sale of liquors, &c., in Sess. Acts 1886–7, p. 694." On the trial, as the bill of exceptions further shows, the State elected to proceed for a sale by the defendant to one Green Franklin, a witness for the State.

[Brantley v. The State.]

of a bottle of "Harter's Wild Cherry Tonic,"·as marked on the bottle; and the sale was not disputed. Said·Franklin testified, "that he bought it as a medicine, being in feeble health, and thinking he needed a tonic; that he took three drinks out of the bottle the day he got it, and afterwards used the whole of it; that it had a stimulating effect like whiskey, but he could not say there was any whiskey in it, and it would take four times as much to affect a man as whiskey, but would make a man drunk if taken in sufficient quantities." Other witnesses for the State, each of whom had taken the bitters, or tonic, testified as to its taste and effect; one saying, "that it tasted something like whiskey, but it would take twice as much to have the same effect;" another, "that it had some of the effects of whiskey, but did not taste like any whiskey he ever drank;" another, "that it had the effect of good whiskey on him;" and another, "that one drink of it would affect him mighty near as much as whiskey." To the testimony of each of these witnesses, as stated, the defendant objected, and excepted to its admission. There was no proof of the ingredients which, in whole or in part, composed the bitters; and the bill of exceptions states, "There was evidence that there were other liquors and drinks than those commonly designated as vinous, spirituous or malt liquors, which were intoxicating, and would produce intoxication in their ordinary use."

The defendant. requested the following charges in writing, and duly excepted to their refusal: (1.) "It is the duty of the State to prove every material allegation of the indictment. The material allegations of the indictment in this case are, that the defendant sold, gave away, or otherwise disposed of spirituous, vinous, or malt liquors; and unless the proof shows, beyond all reasonable doubt, that he sold, gave away, or otherwise disposed of spirituous, vinous, or malt liquors, they should acquit him; and because it is difficult for the State to prove whether such liquors are contained in the bitters or tonic sold, does not relieve the State from proving the facts." (2.) "The mere fact that the bitters or tonic tasted like whiskey, or had some effect like whiskey, is not conclusive that it contained spirituous, vinous, or malt liquors, but is a circumstance for the jury to consider on arriving at the facts or conclusion as to whether it contained spirituous, vinous, or malt liquors, in appreciable quantities; and after looking at this fact, together with all the evidence in the case, carefully and cautiously, unless the jury are satisfied beyond all reasonable doubt, and to a moral certainty, that the defendant sold spirituous, vinous, or malt liquors, within said county, within twelve months before the finding of the indictment, they should find him not guilty, no matter what else is proved."

[Brantley v. The State.]

John Gamble, and Stallworth & Burnett, for appellant, cited *Allred v. State*, 89 Ala. 112; *Carl v. State*, 89 Ala. 93.

Wm. L. Martin, Attorney-General, for the State, cited *Carl v. State*, 87 Ala. 17, and *Knowles v. State*, 80 Ala. 9; and insisted that the charges asked and refused were argumentative and misleading.

CLOPTON, J.—Appellant was convicted of a violation of an act, approved February 11, 1887, which declares, "that after the passage of this act, it shall be unlawful for any person to sell, give away, or otherwise to dispose of any spirituous, vinous, or malt liquors, intoxicating bitters, or any other intoxicating drink, within one mile of any church in Covington county, except it be in an incorporated town where the terms of the charter granted are complied with."—Acts 1886-7, p. 694. The evidence showed that defendant sold a bottle of mixture, known as "Harter's Wild Cherry Tonic," or as called by the witnesses "Cherry Bitters," within one mile of a church in Covington county, and that the sale was not made in an incorporated town.

The first exception goes to the admission in evidence of the statements of witnesses as to its effect upon themselves, and as to the quantity, compared with whiskey, requisite to produce intoxication. The competency of such evidence was expressly decided adversely to appellant's contention, in *Knowles v. State*, 80 Ala. 9, and *Carl v. State*, 87 Ala. 17.

The other exceptions are taken to the refusal of the court to give two charges asked by defendant, which assert the proposition, that, under the averments of the indictment, it is incumbent on the State to prove, " beyond all reasonable doubt, that the defendant sold, gave away, or otherwise disposed of spirituous, vinous or malt liquors"—in other words, it is essential, to convict of the offense charged in the indictment, that the bitters sold be shown to contain an appreciable quantity of one of the classes of liquor specified therein. The indictment charges, that defendant " sold spirituous, vinous, or malt liquors, without a license, and contrary to law," and is in the form prescribed by the Code for " selling liquor without a license, or in violation of special prohibitory liquor laws." The question raised by the charges is, whether this form is sufficient, when the proof shows a sale of intoxicating bitters, and fails to show it contained spirituous, vinous, or malt liquor.

In *Allred v. State*, 89 Ala. 112, the accused was charged with engaging in or carrying on the business of selling spirituous, vinous, or malt liquors, or intoxicating bitters, without a

4

[Brantley v. The State.]

license. The evidence showed that he engaged in or carried on the business of selling a compound known as "Busby's Bitters," which was shown to be intoxicating. A charge, to the effect that the defendant was guilty as charged in the indictment, if he engaged in or carried on the business of selling intoxicating bitters, in a place of less than one thousand inhabitants, in quantity less than one quart, was held to be erroneous. The conclusion was based on the ground, that as the statute requires a license for engaging in the business of selling *spirituous, vinous, or malt liquors,* the offense can only be committed by a sale of liquor of one or another of the classes specified; and as it was a matter of common knowledge that there are beverages, or bitters, which, though intoxicating, do not contain either of the specified classes of liquor, the charge took from the jury the inquiry, whether the bitters sold was spirituous, vinous or malt liquor, or contained liquor of all or either of these classes in appreciable quantity, and required a verdict of guilty, if they found the bitters to be intoxicating simply, though, notwithstanding its inebriating qualities, they might believe it did not contain liquor of either of the specified classes. In coming to that conclusion, the court overlooked a material and controlling provision in sub-division 3 of section 625 of the Code. While the section requires licenses, in terms, of " retailers of spirituous, vinous or malt liquors," the sub-division provides, that " any person who sells or disposes of spirituous, vinous or malt liquors, or intoxicating bitters, in any quantity less than a quart, shall be deemed a retail dealer." The statute requires licenses of retailers of intoxicating bitters, without reference to the ingredient imparting the intoxicating quality; and under an indictment charging engaging in or carrying on the business of retailing spirituous, vinous or malt liquors, or *intoxicating bitters,* without a license, as did the indictment in *Allred's Case,* the accused may be convicted on proof of a sale of intoxicating bitters of any kind. Had the indictment omitted the terms *intoxicating bitters,* we would adhere to the decision in that case.

The present indictment is framed under section 4037 of the Code, which declares: "In an indictment for retailing spirituous, vinous or malt liquors witnout license, it is sufficient to charge that the defendant sold spirituous, vinous or malt liquors without a license, and contrary to law; and on the trial any act of retailing in violation of the law may be proved; and for any violation of any special and local laws regulating or prohibiting the sale of spirituous, vinous or malt liquors, within the place specified, such form shall be held good and sufficient." Section 1059 of the Code of 1852 provided that,

[Brantley v. The State.]

in an indictment for retailing without a license, it was sufficient to charge that the defendant sold *vinous* or *spirituous* liquors, without a license, and contrary to law, and that any act of retailing in violation of the law might be proved. This was the original enactment, declaring what form of indictment shall be sufficient in such cases. An indictment pursuing such form charged every act of retailing which the statutes then in force denounced as an offense; for the law at that time required licenses of retailers only of vinous or spirituous liquors. By an act adopted February 16, 1867, it was declared, that the common form of indictment under section 1059 of the Code of 1852 shall be held and deemed good and sufficient in law for all violations of any special and local laws regulating the sale of *spirituous* liquors within the place specified.—Acts 1866–7, p. 510. Section 1059 and the act of February, 1867, were consolidated, and comprise section 4133 of the Revised Code, and section 4806 of the Code of 1876. The revenue law having been changed so as to require licenses also of retailers of malt liquors, and the sale of such liquors without a license having been declared unlawful, it was deemed necessary, in order to adapt the form of the indictment declared sufficient, to the changed state of the law, to enlarge it so as to include the charge of a sale of malt liquors, disjunctively with spirituous or vinous. Hence, section 4806 of the Code of 1876 was so altered by section 4037 of the present Code, thus making the indictment sufficient to charge the selling of either of the kinds of liquors, the sale of which without a license is prohibited by section 4036. This history of the several enactments and alterations sheds light upon the legislative construction and intention, that such form of indictment should be held sufficient when the offenses consisted in selling one or the other of the specified kinds of liquor.

It is well settled, that indictments conforming to the forms prescribed by the Code are sufficient, though matters of substance may be omitted. Accordingly, an indictment, pursuing the form prescribed by section 4037, has been held sufficient in cases of selling spirituous, vinous or malt liquors in violation of a local prohibitory law; but the court has never gone so far as to hold such form sufficient, when the liquor sold does not come within either of the specified classes. It is an elementary principle, that the accused can not be convicted for an offense not charged, nor covered by the offense charged, in the indictment. Notwithstanding the generality of the Code forms, they do not dispense with the necessity of charging the commission of an act which the law denounces as an offense. When the forms in the Code are insufficient to state the act

constituting the offense, the statute provides that analogous forms may be used.—Code, § 4366.

As said in *Allred v. State, supra,* neither of the terms, *spirituous, vinous* or *malt liquors,* is synonomous with *intoxicating bitters.* The offense charged in an indictment literally following the words used in section 4037, can only be committed by a sale of either spirituous, vinous or malt liquors; and under such indictment, the accused can not be convicted for a sale of intoxicating bitters, not containing inappreciable quantity one or the other of the specified classes.— *Tinker v. State,* 90 Ala. 647.· In *Pause v. State,* 55 Ala. 16, the indictment contained five counts, the last of which charged, that the defendant sold or gave away to a "minor" spirituous, vinous or malt liquors, without the requisition of a physician for medicinal purposes. The defendant was convicted under the fifth count, for selling lager-beer. There being evidence tending to show that lager-beer is a malt liquor, and also that it is a vinous, and not a malt liquor, though not made from the juice of the grape, the defendant asked the court to instruct the jury, that the words "vinous liquors," in the statute, meant liquors made from the juice of the grape, and that they must acquit him, if they believe that lager-beer is not made from the juice of the grape, and are not satisfied beyond a reasonable doubt that it is a malt liquor. This court held, that the charge should have been given. It is said: "Vinous liquors, *ex vi termini,* mean liquors made from the juice of the grape. The charges, properly construed, assert no more than the familiar principle of the criminal law, that to authorize a verdict of guilty, the jury must be convinced beyond a reasonable doubt that the defendant did the act denounced in the statute as criminal." The super-addition of the terms, "intoxicating bitters, or any other intoxicating drink," in the local act, shows the intention to signify by their use intoxicating beverages or bitters which were not spirituous, vinous or malt liquors; otherwise they are superfluous and meaningless. Under the local law, a sale of either "spirituous, vinous or malt liquors, or intoxicating bitters, or any intoxicating drink," is a distinct offense from a sale of any others specified. They may be charged in the alternative as was done in *Allred's Case,* and on the trial a sale of either may be proved; but, unless we are prepared to disregard fundamental rules of the criminal law, we must hold, that under an indictment charging the act constituting the offense in the manner stated in the present one, the defendant can not be convicted on evidence of a sale of intoxicating bitters, unless it be further proved that the bitters contained spirituous, vinous or malt liquors in

[Cook v. The State.]

such appreciable quantity as to bring them within the meaning of those terms as used in the statute.

We have considered at length the legal proposition involved in the charges, for the purpose of putting at rest the question as to the sufficiency of such indictments. Notwithstanding this conclusion, we can not reverse the judgment because of their refusal. The charges are argumentative, and the refusal to give such charges when requested, though they may state a correct proposition of law, is not, according to our uniform rulings, a reversible error.

Affirmed.