# Garrett *v.* The State.

### *Indictment for Murder.*

1. *Error will not be presumed.*—The ruling of the trial court on a motion to quash the indictment for matters *dehors* the record will not be disturbed when there is no evidence set forth in the bill of exceptions to sustain the motion.

2. *Rulings on demurrer part of the record.*—Rulings on demurrer shown only by bill of exception, cannot be reviewed on appeal.

· 3. *Character—how proved.*—Character can only be proved by general reputation, and evidence of particular acts or conduct is inadmissible.

4. *Irrelevant evidence.*—On the trial of a person charged with murder, evidence that he had been discharged on preliminary examination for the same offense, is irrelevant.

5. *Slayer must be free from fault.*—A party who is at fault in bringing on a difficulty, cannot invoke the law of self-defense.

6. *Charges a suming fact in dispute, improper.*—Charges which assume as true matters of fact which are in dispute are improper and should be refused.

7. *Argumentative charges.*—Instructions which are argumentative and single out particular facts on which to lay stress, are properly refused.

8. *Misleading charge.*—A charge that a blacksmith's hammer in the hands of a man of ordinary strength, is a deadly weapon, is misleading when there is no evidence of the size and character of the hammer.

9. *Burden of proof of self-defense.*—The burden of proving that the defendant acted in self-defense in cases of homicide, is on the defendant.

10. *Invading province of jury.*—The general affirmative charge should never be given for either party when there is any conflict in the evidence.

11. *Charges ignoring the duty of retreat,* or the absence of fault on the part of the defendant in bringing on difficulty which led to the homicide, are properly refused.

12. *Reasonable doubt.*—A charge "that the jury must find the defendant not guilty unless the evidence excludes to a moral certainty every supposition, but that of his guilt" is properly refused. (Following *Blackburn v. State,* 86 Ala. 595.)

APPEAL from Clay Circuit Court.

Tried before Hon. LEROY F. BOX.

Henry Garrett was indicted for the murder of Montgomery Sims, convicted of manslaughter in the first degree and sentenced to five years imprisonment in the penitentiary.

The State introduced testimony tending to show that there was a dispute between deceased and defendant, about the settlement of a suit by Sims & Burke, in which firm deceased was a partner, against the defendant in which a writ

Vol. 97.

of garnishment had issued, and in a conversation with Burke, the latter abated some of the costs of the suit—when defendant said, "You are that much more of a d—n gentleman than I thought you were." This conversation was near the door of the shop of Sims & Burke, and the deceased was then working inside the shop. Defendant left the shop, and Sims, the deceased, followed after him with a shop-hammer in his hand—the hammer was offered in evidence—and walked up to defendant, changed the hammer from his right to his left hand, and placing his right hand on defendant's shoulder, pushed him and said, "You go off from here, and let me alone," to which defendant replied, "God d—n you, do you mean to run me off?" and said that he would not be run off. During this time defendant had a knife in his hand, and after Sims pushed defendant they "hugged up" and commenced fighting, defendant warding off blows with the hammer, about which time deceased said, "Take him away, or I will have to kill him;" and defendant cut deceased in the side. · Sims died thirty-five days after the difficulty, from blood-poison caused by the wound as testified by physicians, one of whom stated that he could not testify that the wound alone caused his death. There was evidence that defendant and deceased were friendly up to the time of the difficulty, and that defendant had been drinking Begg's bitters on the day of the killing. There was evidence tending to show that defendant had been whittling before he went to the shop, and his knife was shut up while at the shop of deceased; also that Sims struck the first blow.

At the request of the solicitor, the court gave the following charges, to which defendant excepted:

(1.) "Although the wound may not have been mortal, yet, if it contributed to the death of the deceased, the defendant is guilty to the degree that the circumstances establish under the evidence."

(2.) "Even if the defendant is shown to have been in great peril of losing his life or suffering great bodily harm, if the jury is satisfied from the evidence that the defendant provoked or encouraged the difficulty, then he can not be acquitted on account of his perilous condition."

(3.) "If the defendant is shown by the evidence to have provoked or encouraged the difficulty with the deceased, then he can not set up self-defense as a defense in this case even if it is shown by the evidence that he was really in imminent peril of losing his life or suffering great bodily harm."

(4.) "The defendant can not be acquitted on the ground that he acted in self-defense, if the evidence shows that de-

fendant was not reasonably free from blame in bringing on the difficulty."

The defendant asked the court to give the following charges, and excepted to the refusal of the court to give each of them:

1. If you believe from the evidence that Garrett went to the shop to get Sims & Burke to pay some of the costs—that he had no intention of provoking or bringing on the difficulty—that a fight ensued between Sims and defendant without fault on his part, in which the circumstances and surroundings were such as to produce in the mind of a reasonable man, that it was necessary for Garrett to cut Sims to save his own life or prevent great bodily harm, and that the cutting was done under such circumstances, then Garrett acted in self-defense, and you must not find him guilty.

2. If the jury believe from all the evidence that the defendant did not bring on the difficulty or voluntarily enter into it, but that when he went to the shop, it was only for the purpose of getting Sims & Burke to pay a part of the costs,—that Sims approached him with hammer in one hand and pushed him back with the other, and at the same time was in the attitude of striking defendant; then defendant would be authorized to strike back, if necessary to prevent great bodily harm to himself; and if you further believe from the evidence that the facts and circumstances were such as to produce in the mind of a reasonable man that there was danger of great bodily harm being inflicted by Sims on defendant at and just before the cutting, then the cutting of Sims by defendant under such circumstances would be in self-defense, and they should find defendant not guilty.

3. If the defendant went to the shop, at the suggestion of Hall, for the purpose of seeing about the costs, and with no intention of having a difficulty, and Sims came out to him armed with a shop-hammer and in a rude manner ordered him off, and pushed him away with the intention to provoke a difficulty, and struck at defendant with the shop-hammer, and the parties grabbed each other and scuffled, and that after this and when (the appearances and circumstances surrounding the defendant were such as to produce on his mind a reasonable belief that he was about to lose his life or suffer great bodily harm), and that he had no reasonable way to retreat, then the defendant could cut Sims in defense of his own life or to save his own person from great bodily harm; and if the jury believe from the evidence that the defendant cut Sims under such circumstances, then the law says he is not guilty and the jury should find the defendant not guilty.

[Garrett v. The State.]

4. If the defendant at the time of the difficulty was only trying to get Sims & Burke to knock off some court costs, and had no intention of raising or bringing on a difficulty, he had the right to kill Sims in self-defense, if necessary to prevent the taking of his own life or preventing great bodily harm to the defendant, and if the necessity was not real but only apparent, such as to induce a reasonable man to act on such apparent necessity, and defendant believed such necessity existed, then he had the right to kill Sims, and you must not find the defendant guilty.

5. If Garrett did not provoke the difficulty, and was not at fault in bringing it on, but only went down to the shop to get Sims & Burke to knock off some of the court costs and with no intention of having a fuss or fight, then if Sims assaulted him with a hammer, and produced in his mind even an apparent necessity of cutting him with a knife to prevent great bodily harm, he had the right to strike in self-defense.

6. If it reasonably appears from the evidence that it was necessary for Garrett to cut Sims with his knife to save himself from grievous bodily harm, then unless defendant was instrumental in bringing on the difficulty or voluntarily engaged in it, you must find the defendant not guilty.

7. If you believe from the evidence that Sims was working in his shop at the time the defendant went down there, and even if you believe from the evidence that Garrett cursed in front of the shop, this would not justify Sims in advancing on Garrett with hammer in hand, and in an insulting and severe manner produce on Garrett an assault and battery, and if he did so, Garrett had the right to fight in self-defense, unless he brought on the difficulty, or assisted in bringing it on.

8. If the defendant was free from fault in provoking or bringing on the difficulty, he had the right to cut Sims, if it was necessary to save the life of defendant, or prevent great bodily harm to him by Sims.

9. If Garrett was not at fault in bringing on the difficulty, and in the encounter that ensued, it became reasonably necessary for him to strike with a knife to save his life, or prevent great bodily harm to himself, this would be in self-defense, and the jury should find him not guilty.

10. If defendant was fighting in self-defense and there was not an actual, but only an apparent, necessity of cutting Sims, such as would be produced in the mind of a reasonable man, in order to save his own life or prevent great bodily harm, you must not find the defendant guilty.

11.   Where two persons fight together willingly on a sudden provocation or quarrel, and in the fight which ensues one kills the other without deliberate purpose to take his life or to do him great bodily harm, the killing cannot be a higher offense than manslaughter in the first degree, and if the slayer is suddenly attacked in a violent and dangerous manner without fault on his part in bringing on the difficulty, and he grappled his adversary to preserve his own life or prevent great bodily harm to himself, and in the scuffle which ensues he cuts his adversary in order to save his own life, or prevent great bodily harm to himself, and death ensues, the law will acquit him of all blame for thus causing the death of the party thus slain.

12.   If a man upon a sudden quarrel, and in the heat of passion, cut another so that death is caused thereby, but without premeditation, the killing is not murder in either degree, and if the slayer is without fault in bringing on the difficulty and cut the deceased under the reasonable belief that it is necessary then to strike in order to save his own life or prevent great bodily harm to himself, and from the cut death afterwards results, then the slayer is excusable under the law.

13.   Self-defense which excuses, occurs in the course of a sudden fight, by one, who, being without fault in bringing on the difficulty, kills his assailant in order to save his own life, or prevent great bodily harm to himself, or under the reasonable belief that it was necessary to wound his assailant in order to save his own life, even though the wound be a fatal or mortal one, and unless the jury believe from the evidence beyond a reasonable doubt that defendant is not excusable then they must find him not guilty.

14.   The court charges the jury that there is no conflict in the evidence that Sims, before he was cut, was in a very bad state of health and was down on his back, and when he would skin a place on his hands it would soon fester, and that he then had blood poison and they believe the testimony on that point, and that Sims died from blood poison and not from the cut, or as a result thereof, then the defendant is not responsible for Sims' death, and the jury should so find by their verdict and acquit him of murder and manslaughter in any degree.

20.   Where a witness for the State is shown to have made contradictory statements on a material point, then the jury may disregard the testimony of such witness entirely, and they should disregard all of the evidence of such witness which they do not believe beyond a reasonable doubt to be

[Garrett v. The State.]

true, as stated; the law desires not the conviction of any innocent man.

21. If you believe from the evidence that the witness, Thomas L. Burke, made statements sworn to before you, you can look to this, in connection with all the evidence in this case, in determining what weight and credit you will give his testimony.

22. If you believe from the evidence that the defendant went to the shop with his knife in his hand, then, in ascertaining whether or not said knife was carried open in his hand, you may look to the fact, if you believe it to be a fact, that defendant was talking and standing around the shop for some time, and in the presence of Bell, Burke and Austin, that he had a settlement with Bell, that Bell paid him money, and that defendant put it in his pocket, that none of these men saw the open knife; you may look to all this proof, if you believe it to be the proof in this case, in connection with defendant's statement, in determining whether the knife was open in the hand, or whether it was opened while the fighting was going on.

23. If you believe from the evidence that Burke pulled defendant and Sims apart at the time of the difficulty, that he, at the same time, told defendant to give up his knife, that he had killed Sims; and if you further believe from the evidence, that defendant at the same time, replied: "Men, I had it to do to keep him from killing me," you may look to all this, in connection with all the other testimony in the case, in determing whether Garrett acted in self-defense.

24. In determining whether defendant intended to use his knife in case of a difficulty, the jury must, in connection with all the other evidence, consider the fact that he shut up his knife.

25. The court charges the jury that the hammer, if held by either end, in the hands of a blacksmith of ordinary strength in striking distance, is a deadly weapon under the laws.

26. The court charges the jury that they must find the defendant not guilty, unless the evidence excludes to a moral certainty every supposition but that of his guilt.

27. The jury must believe, beyond a reasonable doubt, that defendant did not act in self-defense or they should acquit him.

28. The State must show by the evidence, beyond a reasonable doubt, that the defendant was at fault in bringing on the difficulty, in order to overcome his plea of self-defense.

29. If the jury believe the evidence in this case, they cannot convict the defendant of either murder or manslaughter in either degree.

30. The court charges the jury that they must not conclude merely from the statements or opinions of counsel, as expressed in argument, that defendant carried the knife to the shop open in his hand; such statements, unsupported by evidence, are not entitled to any weight whatever at the hands of the jury.

31. The court charges the jury that they must not conclude that the defendant drank the entire bottle of bitters, unless the evidence convinces them, beyond a reasonable doubt, that he did drink the entire bottle of bitters; they must not suppose that he did unless the evidence convinces them, beyond a reasonable doubt, that he did. And they must not accept the mere statements of counsel not supported by the evidence, as evidence for any purpose.

W. L. MARTIN, Attorney-General, for the State.

HARALSON, J.—The first exception to the ruling of the court on the trial of the defendant, was on a motion to quash the indictment, on grounds alleged to have been set out in a motion therefor, on file in the cause, but which does not appear in the record.

The record shows, that the motion was predicated on four grounds, the fourth of which was, on motion of the State, stricken from the files, and issue was joined on the remaining three, and trial was had.

The court found the issue against the defendant, and refused to quash the indictment. We are not informed by the bill of exceptions, what the evidence was, and, in the absence of evidence to sustain the motion, the ruling of the court will be presumed to be correct.

One of the grounds of the motion, as we gather from the bill of exceptions, was, that the witnesses before the grand jury, on whose testimony the indictment was found, were sworn by A. S. Stockton, who was before the grand jury, in the absence of the solicitor, as his deputy, without having been appointed by the court, to act in that capacity.

The State demurred, orally, to the motion to quash the indictment, which demurrer was overruled. In announcing its decision on the demurrer, the court stated, "That it was a fact that said Stockton was appointed at said term of the court, to act as solicitor *pro tem*, but that the court had examined the minutes, and found that the records of the court

[Garrett v. The State.]

did not show that said appointment had been made, and, therefore, if said Stockton did, in fact, swear the witnesses before the grand jury, on whose testimony the indictment was found, that the indictment should be quashed." The defendant excepted to the "remark of the court, that said Stockton was in fact regularly appointed solicitor." We are unable to see how this remark made, in communicating a ruling on the demurrer to said motion, was erroneous. Taken in connection with all the court said, it seems to be in line with what defendant was proposing, and favorable to him. This was not, however, on the trial of the issue on the motion to quash, and the ruling being on demurrer, and shown only in the bill of exceptions, if erroneous, is not reversible.—*Powell v. The State*, 89 Ala. 172.

Another ground of that motion, as appears in the bill of exceptions was, that *R. W. Manning* was present when the witnesses were examined, and assisted in finding the indictment, when he was not a member of the grand jury. The bill shows, that the court overruled the motion on that account, and in the absence of the evidence on that point, we presume the correctness of the ruling of the court, especially, since we find the name of *R. W. Manning* among those empannelled as the grand jury.

The defendant sought to prove by a witness, who had been introduced and examined by the State, the general character of Sims, the deceased. This witness had not been examined by the State, touching the character of the deceased. Having answered that he knew his general character, for peace, and that it was good, defendant then asked him, if he had ever heard about Sims running a man, named Moore, around his shop, with a hot horse-shoe. To this question the State objected, which was sustained, and defendant reserved an exception. The ruling was free from error. Good or bad character can be established, only, by proof of general reputation. Particular acts of conduct are inadmissible, either on the direct or cross examination, with certain exceptions, within which this question did not fall. *Moulton v. The State*, 88 Ala. 116.

It was not proper for the defendant to ask his witness, Saunders, if the defendant was discharged on preliminary examination, on this charge. The question called for illegal and irrelevant evidence.

The State asked, and the court gave, four written charges, the three last of which were proper, since they each assert, and are based on the well established principle, that a party who is at fault in bringing on a difficulty, can not invoke

[Garrett v. The State.]

the law of self-defense, if he slay his adversary.—*Cotten v. The State*, 91 Ala. 106.

The first charge given for the State, is not free from error, in that it assumes as a fact, that if the wound, though not mortal, contributed to the death of deceased, the defendant *is guilty* in some degree for having killed deceased, whereas, that fact should have been submitted to the jury, under proper instructions.

The defendant asked thirty-one written charges. The 3rd, was properly refused, because it assumed as a fact, that the appearances and surroundings of defendant, were such as to produce in his mind, a reasonable belief, that he was about to lose his life, or suffer great bodily harm, and that he had no reasonable way of escape.

Nos. 15, 20, 21, 22, 23 and 24 were properly refused, because argumentative, and singled out particular facts on which to lay stress.

No. 25 is bad, because misleading. There is no evidence, of the size and character of the hammer in question, from which this court could say, it was or was not a deadly weapon. Nos. 27 and 28 misplace the burden of proof. No. 29, is the general charge, never proper when there are conflicts in the evidence, and it invades the province of the jury. Nos. 30 and 31 are argumentative. They were evidently intended, chiefly, as replies, to remarks made by the solicitor to the jury.—*Chatham v. The State*, 92 Ala. 47; *Potter v. The State*, 92 Ala. 37; *Brassell v. State*, 91 Ala. 45; *Brantley v. The State*, 91 Ala. 47.

All the other charges, except the 26th, which we consider last, are faulty, in that they either ignore the duty of retreat, or the absence of fault, on the part of the defendant, in bringing on the difficulty, one or both, or are misleading.

As to the correctness of charge No. 26, there is some confusion in our decisions. It reads, "The court charges the jury, that they must find the defendant not guilty, unless the evidence excludes to a moral certainty, every supposition but that of his guilt."

In *Blackburn's case*, 86 Ala. 595, the charge to the jury under review was, "That they should not find the defendant guilty, unless the evidence against him is sufficiently strong, to remove every supposition or hypothesis but that of his guilt," and it was held to have been properly refused. Commenting upon it, the court said, "The third charge asserts, in effect, that every hypothesis of the defendant's innocence, however unreasonable, or speculative, would authorize his acquittal, which is obviously erroneous."

[Fuller v. The State.]

In *Little v. The State*, 89 Ala. 102, the charge was, "Unless you are convinced beyond all reasonable (?) and to the exclusion of every other hypothesis, that defendant struck with an axe, your verdict should find the defendant not guilty." The court said, "The confusion of this charge, resulting from the omission of the word *doubt* from its first clause, was a sufficient reason for its refusal. Another justification of the court's action upon it, is found in the absence of any qualification of other hypotheses which must be excluded. It is not the law, that the evidence must exclude every other hypothesis, than that of defendant's guilt, or than the existence of the facts essential to conviction. The rule goes no further than to the exclusion of other reasonable, not speculative, imaginary, possible hypotheses."

We adopt our last utterance on this subject, quoted above, and what we said in *Blackburn's* case *supra*, as being the sounder rule, and our other adjudications in conflict therewith, are modified to the extent of conforming them to this ruling.—(*Mose v. The State*, 36 Ala. 230; *Joe v. The State*, 38 Ala. 424; *Cohen v. The State*, 50 Ala. 112; *McGee v. The State*, 52 Ala. 226; *Coleman v. The State*, 59 Ala. 530; *Riley v. The State*, 88 Ala. 193.

For the single error in giving charge No. 1 for the State, the judgment and sentence of the court below must be reversed.

Reversed and remanded.