# Yarbrough v. State.

*Indictment for Assault with Intent to Murder.*

1. *Organization of jury; excusing juror for sickness.*—Where, in a criminal case, after the organization of the jury is completed, but before the indictment is read to them, one of the jurors is taken sick and states to the court he can not proceed with the trial, the court may excuse him, and complete the jury from the regular *venire* for the week, or, if the regular *venire* is exhausted, the place of the excused juror can be supplied by summoning and empannelling from the citizens of the county a qualified juror; and if, after the trial has proceeded by the examination of some of the witnesses, it becomes necessary to excuse another juror by reason of sickness, his place can be supplied in like manner.

2. *Evidence of identity of defendant; admissibility.*—Where, in a criminal case, the identity of the defendant, as being the person who committed the crime charged, is one of the matters in issue, a witness may testify that he knew and identified the defendant at the time the offense was committed, and was positive the defendant then on trial was the person whom he saw commit the offense; and, as pertinent to the same inquiry, it is also competent to prove that the defendant was seen in the vicinity where the offense was committed the morning after its commission.

3. *Evidence affecting credibility of witness; when admissible.*—Where on a trial under an indictment for an assault with intent to murder and with intent to rob, it is shown that the prosecution was not commenced for several months after the assault was made, and the person assaulted testified that he took no steps to have defendant ar-

[Yarbrough v. The State.]

rested until after he was told by one who was a witness in the case that she had heard the defendant conspiring with others on the night of the assault to rob him, evidence elicited from said witness on her cross-examination, after she has testified as to the conspiracy on her direct examination, that a short time before she gave such information to the person assaulted she had been arrested on a criminal charge preferred by defendant, is admissible as tending to affect the credibility of said witness.

4. *Same; admissibility of evidence to rebut adverse inference.*—To rebut the unfavorable inference arising from such evidence, it is admissible to show that said witness had given the same information to the person assaulted and to others, before her arrest on the charge preferred by defendant.

5. *Same; when fact that witness made statement previous to certain time admissible.*—When it is sought to discredit a witness, by attributing his or her testimony to some act on the part of the person testified against calculated to excite unfriendly feeling on the part of the witness, it may be shown, in rebuttal of the inference that the testimony was fabricated as the result of the unfriendly act, that the witness made the same statement prior to the time when the proven act occurred.

6. *Evidence of insanity, by one not an expert.*—One who is not an expert, but who, from having known a person familiarly for a long time, has had opportunities to form a correct judgment as to the mental condition of such person, is competent to testify that said person possesses a sane mind; but such non-expert is not competent to give an opinion as to the insanity of said person, without stating the facts and circumstances upon which he bases his opinion.

7. *When right to be tried jointly with a co-defendant does not exist.*— A defendant jointly indicted with another is not entitled to be tried jointly with his co-defendant where it appears that the latter had not been arrested when defendant was put upon his trial, and the demand for a joint trial was not made until the organization of the jury had been entered upon. The statute (Code, § 4451) confers the right of severance when two or more are indicted jointly, but not the right to demand a joint trial.

8. *Evidence of character; witness's credibility impeached by inquiry into his general character.*—The credibility of a witness may be impeached by inquiry into his general character, and the inquiry is not limited to his reputation for truth and veracity.

9. *Same; evidence of witness's character years ago admissible.*— Where the character of a witness is attacked, evidence of the good character of said witness many years preceding the trial, and while living in a community other than that in which it was testified she had a bad character, is admissible.

10. *Same; counsel not allowed to read in evidence to jury from legal text books.*—Extracts from legal text books, or the books themselves, are not admissible in evidence; and a court properly refuses to allow

counsel to read in evidence to the jury from legal text books.

11. *When defendant jointly indicted with another, but tried separately, his guilt not dependent on his co-defendant's guilt; charge to jury.* Where a defendant is jointly indicted with another for an assault with intent to murder and with intent to rob, but is tried separately, a charge that, "If the jury believe from the evidence one of the defendants in the indictment was guilty of an assault with intent to murder, and that the other was guilty of an assault to rob, in that event the defendant cannot be convicted," is erroneous, since the guilt of the defendant on trial is not dependent upon the guilt or innocence of the person with whom he was jointly indicted.

12. *Charge of court to jury; not necessary to prove every single fact.* In a criminal case a charge which instructs the jury that "Every single fact or charge against the defendant tending to prove his guilt, or which would be necessary in regard to same, should be clearly and satisfactorily proven, and if not so proven, defendant should be acquitted," is properly refused.

13. *Same; exacting too high a measure of proof.*—In a criminal case, a charge to the jury which instructs them that "If there exists any reasonable or substantial doubt of the guilt of the defendant, he is entitled, as of right, to be acquitted. And should any uncertainty whatever exist as to his guilt he should be acquitted," exacts too high a measure of proof, and is properly refused.

14. *Same; same.*—In a criminal case, a charge to the jury which instructs them that "In order to justify the inference of guilt, the inculpatory facts must be incompatible with the innocence of the accused and incapable of explanation upon any other reasonable hypothesis than that of defendant's guilt," is properly refused because it exacts too high a measure of proof.

15. *Same; when indictment contains two counts, not necessary to prove defendant guilty of both.*—When a defendant is tried under an indictment containing two counts, one charging assault with intent to murder, and the other, an assault with intent to rob, a charge to the jury which instructs them, that although the facts might show that defendant was guilty of an assault with intent to rob, he must be acquitted if the jury should believe he was not guilty of an assault with intent to murder, is properly refused; such charge asserting not only a wrong principle, but being also argumentative and misleading.

16. *Same; reasonable doubt.*—In a criminal case, a charge to the jury that "A reasonable doubt is one that excludes every reasonable hypothesis except that of the guilt of the defendant, and only when no other supposition will reasonably account for all the conditions of the case, can the conclusion of guilt be legitimately adopted," is properly refused as being misleading and confused in meaning.

APPEAL from the Criminal Court of Jefferson.
Tried before the Hon. SAMUEL E. GREENE.

The indictment under which the appellant was tried, was preferred at the April term, 1893, of the criminal court of Jefferson county, and contained two counts; the first charging the appellant and one Beverly Hargrove with assault with intent to murder, and the second charging the appellant and said Beverly Hargrove with assault with intent to rob. The defendant was convicted under the first count, and sentenced to the penitentiary for twenty years.

After the announcement of ready by the State and the defendant, and after the organization of the jury, but before the indictment was read to the jury, one of the jurors, named Reed, stated to the court that he was sick and could not possibly sit on the jury, and asked to be excused. Upon examination by the court, the juror stated the cause of his suffering, and said that he made no excuse when called as a juror, and had been in attendance on the court discharging his duties as a juror during the week. The court excused said juror, against the objection and exception of the defendant. In obedience to the order of the court, the bailiff summoned another juror on the *venire* of the week, named Brown, whom the defendant challenged. The court then ordered the bailiff to summon one Lawler, the only remaining juror who had not been challenged by the State or the defendant, "and who, the jury having been completed, was excused until the next morning." The defendant objected to the court making said order, and duly excepted to the court's overruling his objection. Upon Lawler being ordered by the court to take his seat on the jury, the defendant offered to challenge him, but having, in the selection of the jury, challenged nine jurors, the court refused to allow the defendant to challenge Lawler, and the defendant thereupon excepted. The defendant then filed a plea of former acquittal, setting out the facts above stated. The State demurred to said plea, and upon the court sustaining the demurrer the defendant duly excepted.

The bill of exceptions states: "The defendant then objected to going to trial alone, it being admitted by the State that Beverly Hargrove had a few minutes before been arrested, and was, at this time, in jail, and at the time the case was called and the organization of the jury was begun that the defendant, Hargrove, was not under

arrest, but was arrested before the jury was completed. It being further admitted that the defendant had not demanded a severance and that all the witnesses subpoenaed for the State were present, the court overruled the defendant's objection, and ordered the defendant to trial alone." The defendant excepted to the ruling of the court, and after excepting to the court's overruling his objection to going to trial with the jury then organized, the defendant pleaded not guilty. After the State examined several of its witnesses, the court adjourned until the next morning. On the court re-convening the next morning, the juror Lawler stated to the court that he was sick, and unable to proceed with the trial of the cause, and asked to be excused. Upon stating the nature of his sickness, the court excused the juror, and the defendant duly excepted thereto. The court thereupon ordered the bailiff to summon a qualified juror to take the place of said Lawler. The defendant objected to this order, and duly excepted to the court's overruling his objection. The entire *venire* for the week having been exhausted, the bailiff summoned one J. G. Benton, and after examining him as to his qualifications, the court pronounced him competent. The defendant offered to examine said juror, but failed and refused to state for what purpose, and what he wished to ask the juror, and the court refused to allow the defendant to ask the proposed juryman any question; and to this ruling of the court the defendant duly excepted. The defendant claimed the right to challenge the said juror, but the court refused to allow the defendant to challenge, he having already challenged nine jurors, and the defendant duly excepted. The defendant thereupon objected to going to trial before the jury as organized, "because said jury was not summoned, impannelled and sworn as required by law." The court overruled this objection, and the defendant excepted. The defendant then moved the court to be discharged, upon the ground that he had already been placed in jeopardy, and duly excepted to the court's overruling his motion. The defendant then filed a plea of former jeopardy and a plea of former acquittal, setting out the facts as stated above. To these pleas the State demurred, and upon the court's sustaining the demurrer to each of said pleas, the defendant separately excepted to this ruling.

The State introduced one J. B. Cole, as a witness, who testified in substance, that some time between the 1st and 15th of February, 1891, the defendant and a tall black man, whom he did not know, came into his store in the suburbs of the city of Birmingham about 8 o'clock at night, where he and his daughter, a girl 12 years old, were sitting by the stove; that as the witness started behind the counter and asked the defendant and his companion what they wanted, they each drew their pistols and said that they wanted money; that as the witness dodged under the counter the defendant fired at him, his head, before he dodged, being directly in the range of the ball; that the other man fired into the ceiling over the head of the defendant, and did not fire at the witness at all. The witness identified the defendant as the man, and further testified, in answer to the question of the State, "that he saw the defendant the next morning pass right by his store," walking within a few feet of the witness. The defendant objected to the question eliciting this statement, on the ground that it was irrelevant and immaterial, and also moved the court to exclude the answer of the witness upon the same ground. The court overruled the objection and motion, and the defendant separately excepted to each ruling. On cross-examination, the defendant's counsel asked the witness : "If it was not a fact that he had taken no steps to have defendant arrested until after Polly Foster told him that she had heard the defendant and two other men, on the night of the assault, conspiring to rob him; and if Polly did not make this statement a day or two before defendant's arrest, and a day or two after her conviction by a justice of the peace for an assault on Beverly Hargrove's sister, Beverly Hargrove being the complainant in that prosecution, and a co-defendant in this?" This witness answered, that such was a fact. On re-direct examination by the State, this witness was asked in rebuttal : "If Polly Foster had not, previous to the time immediately preceding the defendant's arrest, told him in another conversation of this conspiracy between the defendant and Beverly Hargrove to rob him?" The defendant objected to this question, on the ground that it called for illegal and irrelevant testimony. The court overruled the defendant's objection, and he duly excepted. Upon the wit-

ness answering that "Polly Foster had spoken to him several times about the alleged conspiracy, the first time being as much as six or eight months before defendant's arrest," the defendant moved to exclude the answer, and duly excepted to the court's overruling his motion. This witness further stated that the defendant, Ed Yarbrough, came into his store several times and purchased goods, about the 8th or 10th of the month, after the alleged assault. The witness further testified that he did not remember stating to the captain of the police force of the city of Birmingham, or to the reporter of one of the newspapers of Birmingham, that he could not identify the man who assaulted him. The State asked the witness: "Are you positive that the defendant is one of the men who fired a pistol in your store early in February, 1891?" The defendant objected to this question, because it called for illegal and irrelevant testimony, and asked for the witness's opinion. The court overruled the objection, and the defendant duly excepted; and, upon the witness answering, that he was positive that the defendant was the man, the defendant moved to exclude his answer, and duly excepted to the court's overruling his motion.

The testimony of Katie Lee Cole, the daughter of the witness, J. B. Cole, who was in the store on the night of the alleged assault, was substantially the same as that of her father. The State asked the witness, Katie Lee Cole: "Are you positive that the defendant is one of the men who fired a pistol in your father's store, at night in the early part of February, 1891?" The defendant objected to this question, on the ground that it called for illegal and irrelevant testimony, and asked for the opinion of the witness. The court overruled the objection, and the defendant excepted; and, upon the witness answering that she was positive that the defendant was the man, the defendant moved to exclude her answer upon the same grounds, and duly excepted to the court's overruling the motion.

During the examination of Robert Cain, a witness for the State, he was asked: "Did you see the defendant the next morning after the alleged assault?" The defendant objected to this question, on the ground that it called for illegal and immaterial evidence, and duly excepted the court's overruling his motion. The witness

4

answered that he "did see the defendant the next morning after the alleged assault, passing Cole's store." The defendant moved to exclude his answer, and duly excepted to the court's overruling his motion.

Polly Foster was introduced as a witness for the State and testified that she lived in the same block with J. B. Cole, Beverly Hargrove, and the parents of the defendant; that she was a washerwoman and cook; that in the fall of the year, about 8 o'clock P. M. on the night Cole was assaulted, she was in the hall of the house between the room occupied by herself and the room occupied by one Fanny Sanders, sister of Beverly Hargrove, and looking through a crack in the partition she saw the defendant, Beverly Hargrove, and another man in the room of said Fanny Sanders, and heard them conspiring to rob Mr. Cole, and that shortly after she heard four pistol-shots. This witness further testified, on cross-examination, "that she made no inquiries, nor had she said anything to Mr. Cole about it until after her trouble with Beverly Hargrove and his sister."

The testimony for the defendant tended to prove an *alibi*, and there was testimony to the effect that there was no crack in the room occupied by Fanny Sanders, through which the witness Polly Foster could have seen into the room. The defendant also proved by the captain of the police, that the witness Cole had stated to him, after the alleged assault, that he did not know the men who assaulted him, "but that he thought he might recognize one of them."

One of the witnesses introduced for the State testified that he knew Polly Foster, and knew her general character in the community where she lived, and that it was bad; "and stated a number of things tending to show her mental unsoundness, and stated, as his opinion, that Polly Foster was of unsound mind." Several witnesses for the defendant testified that in their opinion Polly Foster was of unsound mind. The defendant offered to read in evidence to the jury from "Wills on Circumstantial Evidence," a legal text book, but upon the State's objection, the court refused to allow the defendant to read from said book, and the defendant thereupon excepted. A like objection and exception were reserved by the defendant to the court's refusal to allow him to read from other text books.

The State introduced in rebuttal one Z. T. Hurst, who testified that he knew Polly Foster, and upon being asked if he knew her general character he said that he did not know her general character in Birmingham, "but he knew her character in Gadsden, Alabama, 10 or 12 years ago, and that it was good at that time; and that he had known her for 16 years." The defendant moved to exclude this testimony of the witness, and duly excepted to the court's overruling his motion. The witness further testified that he saw Polly Foster for about two years once every week; that during that time she washed for him, and he had frequent conversations with her. The State then asked the witness: "What was his opinion as to her mental soundness or unsoundness at that time?" The defendant objected to this question, upon the ground that the witness was not shown to be an expert, and did not show sufficient familiarity with the witness Foster's condition to express an opinion. The court overruled the defendant's objection, defendant excepted, and the witness answered: "I think she was weak minded."

Pat Walsh, as a witness for the State, in rebuttal, testified: "That he had known Polly Foster for 16 or 17 years, and that he saw her frequently in Gadsden for a space of two yeers about nine years ago, and that she was employed in his family for several months as a cook, and he had frequent conversations with her, and that he had known her in Birmingham for seven years, and that she had lived in his family here for four years." The State then asked this witness: "What is your opinion as to her mental condition?" The defendant objected to this question on the ground that the witness was not qualified from the facts stated to give his opinion as to her mental condition. The court overruled the objection of the defendant to this question, and he thereupon duly excepted. Upon the witness answering that he considered her of sound mind, the defendant moved to exclude his answer, on the ground of objection interposed to the question, and duly excepted to the court's overruling his motion. The State also introduced in rebuttal several witnesses, who testified that they had examined the house described by the witness Polly Foster, and that they found a crack through which they could see into the adjoining room, which was occupied by Fanny San-

ders in February, 1891. The defendant objected to this testimony, and moved to exclude the testimony, and duly excepted to the court's overruling his motion.

The defendant requested the court to give the following written charges, and separately excepted to the court's refusal to each of them: (1.) "If the jury believe the evidence, they will find the defendant not guilty." (2.) "If the jury believe from the evidence that one of the defendants in the indictment was guilty of an assault with the intent to murder, and that the other was guilty of an assault with the intent to rob, in that event the defendant could not be convicted." (3.) "Every single fact or charge against the defendant tending to prove his guilt, or which would be necessary in regard to same, should be clearly and satisfactorily proven, and if not so proven, defendant should be acquitted." (4.) "If there exists any reasonable or substantial doubt of the guilt of the defendant, he is entitled, as of right, to be acquitted. And should any uncertainty whatever exist as to his guilt he should be acquitted." (5.) "In order to justify the inference of guilt, the inculpatory facts must be incompatible with the innocence of the accused, and incapable of explanation upon any other reasonable hypothesis than that of defendant's guilt." (6.) "If the jury should be of the opinion that defendant was in the store of Mr. Cole, but that it was only his intention to rob and not to shoot or maim or kill Mr. Cole, but to frighten him, that he would not be guilty of an assault with intent to murder, and that an attempt to murder implies both a purpose and an actual effort to carry that purpose into execution —defendant would not be guilty." (7.) "A reasonable doubt is one that excludes every reasonable hypothesis except that of the guilt of the defendant, and only when no other supposition will reasonably account for all the conditions of the case, can the conclusion of guilt be legitimately adopted."

B. M. ALLEN, for appellant.—1. There was error in the rulings of the court in excusing the juror for sickness, and in not allowing the defendant additional challenges, and in sustaining a demurrer to the plea of former acquittal.—*People v. Dolan*, 51 Mich. 611; *Reg. v. Rieve*, Lond. Leg. Obs. 312; 3 Western Law Journal, 95.

2. To sustain the general character of the witness Polly Foster, the court erred in allowing the evidence as to what her character was 15 years before in a community different from that in which she had lived just preceding the trial.—*Hadley's Case*, 55 Ala. 39, 1 Brick. Dig. 513, §§ 910—914; *Cauley v. State*, 92 Ala. 72; 1 Thompson on Trials, §§ 526, 527.

3. There was error in the rulings of the court in the admission of evidence on the question of the insanity of the witness Foster.—*Ford v. State*, 71 Ala. 397; *Powell v. State*, 25 Ala. 21; *Kempsey v. McGinniss*, 21 Mich. 123; *Beaubien v. Cicotte*, 12 Mich. 459; *Rice v. Rice*, 50 Mich. 454; *Florey's Ex. v. Florey*, 24 Ala. 247; *Norris v. State*, 16 Ala. 776; *Baldwin v. State*, 12 Mo. 223; *Potts v. House*, 6 Ga. 324; Stock on Lunacy, 43.

W. C. FITTS, Attorney-General, for the State.

COLEMAN, J.—The defendant and one Hargrove were jointly indicted. There were two counts, one charging an assault with intent to murder, the other with intent to rob. The defendant was tried alone, and sentenced for an assault with intent to murder.

In the case of *Hawes v. The State*, 88 Ala. 37, it appears that after the twelve jurors were selected and sworn to try the case and before the indictment was read to them, G. B. Gordon, one of the jurors, was excused because of the sickness of his wife. After a full consideration of all the authorities, it was held that the action of the court was justified by the necessities of the case, and his ruling was not available to the defendant. This authority is decisive of all the questions growing out of the empanelling of the jury, and the judgment of the court sustaining a demurrer to the plea of former acquittal.

In the case of *Beavers v. The State*, 103 Ala. 36, it was held that a witness might testify that he saw and recognized the defendant, after his arrest, as the same person whom he saw commit the offense. There was no error in applying the same rule to the case at bar. It was also competent to prove that the defendant was seen in the vicinity where the offense occurred on the morning after its commission. The testimony showed that the witness Cole, who was assaulted, had the de-

fendant arrested several months after the assault had been made. This witness had testified that he knew and identified the defendant at the time of the assault. On his cross-examination he was asked, if he did not sue out the warrant a day or two after he was told by one Polly Foster that she overheard the defendant and one Hargrove conspire to rob the witness Cole. The witness Polly Foster, after testifying in behalf of the State to the conspiracy, on her cross-examination was asked, if the defendants did not have her arrested on a criminal charge; and one or two days afterwards, if she did not inform Mr. Cole of the alleged conspiracy of the defendants to rob him, and that, immediately thereafter, Mr. Cole instituted the prosecution against defendants. The evidence thus elicited on cross-examination by the defendant, was competent as tending to affect the credibility of the witness for the prosecution; and the question is presented, whether it was competent, in rebuttal, to show that the witness Polly Foster had made the same statement to Cole and to others, before her arrest, as she made subsequent to it. We are of opinion that such evidence is competent. The distinction must be kept in mind, between such evidence and its purpose, and when a witness attempts to corroborate his own evidence, by proof of having made similar statements to others. The latter is inadmissble. It is mere hearsay and not competent as tending to prove a fact; but when it is sought to discredit the witness, by attributing his or her testimony to some act on the part of the person testified against calculated to excite unfriendly feelings in the witness, in rebuttal of the inference to be drawn from such act, it may be shown that the witness made the same statement, prior to the time when the proven act occurred. This evidence could not be considered as original or corroborating evidence of the truth of the fact testified to, but purely in rebuttal of the inference, that the testimony was manufactured or the result of the unfriendly act.

The record is not very clear as to the competency of all the witnesses to testify as to the soundness of mind of Polly Foster. In our opinion if there was any error, it was for the advantage of the defendant. In the case of *Burney v. Torrey*, 100 Ala. 157, it was said that sanity being the normal condition of mankind, a non-expert

[Yarbrough v. The State.]

who had enjoyed proper opportunities from a long and familiar acquaintance to form a correct judgment as to the mental condition of another was competent to testify that the person possessed a sane mind; but that a non-expert was not competent to give an opinion as to the insanity of another without stating the facts and circumstances upon which he based his opinion.

There is nothing in the point that the defendant demanded that he be tried jointly with Hargrove who was jointly indicted. The facts showed that Hargrove had not been arrested at the time when the defendant was put upon his trial, and the demand for a joint trial was not made until the organization of the jury had been entered upon. We held also in the case of *Woodley v. The State*, 103 Ala. 23, the proper construction of the statute empowered each defendant to demand a severance, and not a joint trial.

In regard to the question to be propounded to a witness examined as to character, not as affecting the fact of the guilt or innocence of a defendant, but the credibility of a witness who has testified, it is proper to enquire as to his general character for truth and veracity, but the enquiry is not limited to general character for truth and veracity. It is permissible to show general bad character, and that the party is not entitled to credibility because of his general bad character, although it may not be notoriously bad for truth and veracity. This proposition rests upon the well recognized fact that the evidence of a person of notorious bad character is not entitled to the same weight, as one whose life and conduct commands the confidence of the public.— *Ward v. The State*, 28 Ala. 53; *McInerny v. Irvin*, 90 Ala. 275; *Mitchell v. The State*, 94 Ala. 68. The court ruled in accordance with these principles. There was no error in excluding text books as evidence.

The court did not err in receiving evidence of the good character of the witness many years preceding the trial, and when the witness whose character was attacked lived at Gadsden. We considered this question in the case of *Jones v. The State*, 104 Ala. 30.

Hargrove was not on trial, and the jury were not called on to determine his offense, or whether he was guilty of any offense, in order to arrive at a proper conclusion as to the guilt of the defendant.

The third charge requested for the defendant, asserts that "every single fact or charge against the defendant tending to prove his guilt should be clearly and satisfactorily proven, or else the defendant must be acquitted." Although there may have been many facts tending to show his guilt not clearly and satisfactorily proven, yet there may have been sufficient other evidence to satisfy the jury beyond a reasonable doubt of the guilt of the defendant. This charge was properly refused.

The fourth charge requested exacts too high a measure of proof. It asserts that if "any uncertainty whatever exist," the defendant should be acquitted.

The fifth charge is objectionable for the same reason. It may be that some of the inculpatory facts are capable of explanation, while others may not be. If there was inculpatory evidence, sufficient to satisfy the jury beyond a reasonable doubt of the guilt of the defendant which was incapable of reasonable explanation consistent with his innocence, it was the duty of the jury to convict notwithstanding some facts of a criminal character may have been capable of explanation consistent with his innocence.

The sixth charge is objectionable for several reasons. It asserts in effect that although the facts might show that the defendant was guilty of an assault with intent to rob, he must be acquitted if the jury should believe he was not guilty of an assault with intent to murder. If the predicate had been correct, the proper conclusion would have been an acquittal of an assault with intent to murder and not an acquittal generally. This charge was objectionable for the further reason that it was argumentative and misleading. The defendant may have been in the store, and at one time his only intent may have been to frighten and rob, but it would not follow that the intent to murder did not succeed the first intent, and did not exist at the time the pistol was fired.

The seventh charge requested is confused and misleading. The use of the word "supposition" in a charge, of itself has a tendency to excite an imaginary or speculative enquiry, and is not permissible unless the context shows that it is a "supposition" or hypothesis, reasonably arising from or suggested by the facts in evidence. *Garrett v. The State*, 97 Ala. 18; *McGehee v. The State*, 52

Ala. 224; *Cohen v. The State*, 50 Ala. 112. The first clause of the charge, to-wit, "A reasonable doubt is one that excludes every reasonable hypothesis except that of the guilt of the defendant," no doubt asserts a proposition of law which should be given, but when this proposition is followed as a part of the same charge with the further statement "and only when no other supposition will reasonably account for all the conditions of the case can the conclusion of guilt be legitimately adopted," the meaning becomes obscure. What is meant by "reasonably accounting for all the conditions of the case" is not plain nor readily understood. Charges should be expressed in plain simple language. The juries have been taught and are fully advised as to the degree of conviction of mind, necessary to constitute satisfaction beyond a reasonable doubt. The courts ought to, and we have no doubt, when requested, always instruct the jury that before they can convict in a criminal case, the evidence must satisfy them beyond a reasonable doubt of the defendant's guilt; and when this principle is couched in language that misleads and deceives the court itself, it must certainly be calculated to mislead and confuse the average juror. There can be no reversible error in refusing such charges.

The evidence in this case, as it appears in the record, is not so conclusive of the defendant's guilt as to be entirely satisfactory, but we are confined to reviewing the rulings of the trial court, and in these we find no error. The weight and credibility of the evidence was for the jury.

Affirmed.